Best to enforce it. And so with that, we'll get underway with the first case, NextEra Energy versus the United States of America. Good morning. Thank you and good morning, Your Honors. I'm David Salmons on behalf of the appellant, NextEra Energy. This case concerns the tax treatment of the fees that nuclear power plant operators are to the Department of Energy under the Nuclear Waste Policy Act, or NWPA, for the permanent disposal of the most radioactive material produced during operations of their plants, namely their spent nuclear fuel and high-level radioactive waste. This Court addressed the NWPA in its decision in the Alabama Power case, and it held that the Act imposes a legal liability on operators to fund the full cost of that disposal and that this liability is satisfied when the operator pays the fees mandated under the standard contract. Now the tax treatment... Well, that case was really about an amendment to the NWPA contract, wasn't it? I mean, that was not about this subject matter. It was not about the tax treatment of the fees, Your Honor. It was about the expenditures that the government were allowed to make out of the nuclear waste fund funded by those fees. But in the course of the Court's decision, it said a few things regarding the NWPA and how it works that we submit shows some of the errors that were committed below and the problems with the government's arguments. And I would just point to a couple of things. First, the Court in Alabama Power made clear that the NWPA was concerned with two fundamental questions, what should be done with nuclear waste and who should pay for its disposal. And the Court talked about the quid pro quo arrangement that was imposed under the NWPA amendments to the Atomic Energy Act. And it said that under that arrangement, each utility roughly pays the cost of disposing of its waste and no more using kilowatt hours as a proxy for waste production. So what we do think that Alabama Power makes clear is that the fees that are at issue in this case are for the permanent disposal of spent nuclear fuel and high-level waste. It's not for the generation of electricity. And that was one of the errors we submit was made by the Court below. It characterized these fees as being unrelated to the permanent disposal and decommissioning of fuel and instead was just based on the generation of electricity. That's incorrect under this Court's decision and under the D.C. Circuit's decision in 2013 to suspend the fees. The fee is measured by the production of electricity, right? It is the mechanism for calculating the fees when they're paid. But since 2013, because of the decision of the D.C. Circuit using the same reasoning that the fees are about the permanent disposal costs, not about the generation of electricity, there have been no fees collected under the Act. You know, this deduction, though, is all based on the decommissioning of a nuclear power plant. That's correct. But decommissioning is not defined in Section 172F, is it? It is not specifically defined in 172F. All right. But doesn't the common-sense meaning of decommissioning means to take out a service? Now, are any of these power plants in question being taken out of service? Well, no. All of the power plants at issue are still in operation, Your Honor. But that is not how decommissioning costs are defined. And, in fact, I think both sides here agree that the meaning of decommission, the best place to look is in Section 50.2 of the NRC regulations, which defines that to decommission a nuclear power plant is to remove all of the radioactive material so that it can be restored or released to unrestricted use and the license can be terminated. Both sides agree. But is there any state or federal law that requires NECSERA to decommission any of its power plants? Yes, Your Honor. The Atomic Energy Act, the way, and the NWPA amendments to the Atomic Energy Act. But your plants are operating. Yes. They are operating. You have no plans to take them out of service. No? Well, no, Your Honor. In fact, there are no immediate plans to take them out of service, but this is important. The duty to decommission a nuclear power plant is imposed through the licensing process under the Atomic Energy Act and the amendments to the Atomic Energy Act. In other words, in order to obtain a license to construct and operate a nuclear power plant, an express condition on that license, a term of that license imposed by law, required by law, is that you undertake the liability to remove and safely dispose of all of the radioactive material before that license can be terminated. So, under your definition, the day you open, you're in the decommission process because you're producing this waste? Well, Your Honor, the day the plant begins operations, you have incurred the full legal liability to cover all costs related to the removal of radioactive material. That will take place over time, and when those costs can be deductible, may depend on other liability to fully decommission, to remove and dispose properly of all of the radioactive material arises from the moment the plant operates. That's why Congress in 172F has a special carryback provision for nuclear decommissioning expenses that allows the carryback not just for 10 years, but to the first year of plant operations. May I ask you about 172F? It's my understanding that in 2017, that provision was removed from the tax code? That's correct. There are no longer carrybacks under 172F, not just for decommissioning, but generally speaking. But that doesn't affect? It does not affect this case, Your Honor. Was there any question whether these fees were eligible for the carryback before this 26 CFR amendment came into effect in 2010? Is this when your argument arose at that point? No, Your Honor. I think these fees... Had this argument been made before 2010? Not that I'm aware of, although I would just point out that it's not, I don't think that's unusual. In other words, I think what happened is that generally speaking, nuclear power plants do not have significant net operating losses. So it's not just the payment of the fees that triggers the right to carry back. It's having significant net operating losses that need to be carried back. And most utilities don't experience year-to-year net operating losses in that magnitude. What was unusual here were some of the circumstances that NextEra found itself in, with hurricanes in Florida and other things that created significant net operating losses that allowed it to make this argument and to apply the carryback. But to the point about the fact that the plants are still operating, I think it's important to realize that the Treasury's own regulations under the 468A fund, which is a decommissioning fund, a qualified trust fund that can be used to fund future decommissioning expenses, expressly defines decommissioning expenses in a way so that they can be incurred whether or not the plant is still generating electricity. And the storage costs that are at issue, it specifically includes the construction and independent storage facilities that are used to store spent fuel. The government agrees and concedes that that is decommissioning expenses that are subject to the carryback under 172A. Right, but that regulation says the term does not include expenses to be incurred in connection with the disposal of spent nuclear fuel under the Nuclear Waste Policy Act, right? That's right, Your Honor. And so let me be clear. The first point I was making is that it defines decommissioning not to be governed by whether the plant is operating or not. If it's radioactive material that eventually has to be removed, you can remove it during plant operations and it's still a decommissioning expense eligible for the carryback and that you can use decommissioning funds for. 468A is this fund for future decommissioning expenses and the regulation carves out the fees under the NWPA. But there's a reason for that. That's because these fees are paid on a quarterly basis. You don't need to set aside funds in a savings account for future decommissioning expenses. The real question with regard to that, Your Honor, is whether the plain terms of Section 172F are broader than the terms of 468A and those regulations. And we think the answer is clear that they are. If you look at 172F, it refers to any amount allowable as a deduction under this chapter as long as it's a law requiring decommissioning. You know, I understand you've got a couple of other hurdles. Even if we agreed with you that this was a decommissioning expense, you first have to show that it's something under state or federal law and the judge below ruled against you on that, right? Well, that's the ruling, Your Honor, that we submit is directly inconsistent with this Court's decision in Alabama Power. Alabama Power holds that the NWPA imposes a legal liability to pay these fees for the permanent disposal of spent fuel. She said it was a choice you made, and you're saying, no, it wasn't any choice. Well, that's clearly inconsistent with Alabama Power, yes, Your Honor. And then you've got a third hurdle, which I guess the district court didn't reach. This three-year, the act giving rise to the laws has to be more than at least three years before the beginning of the taxable year. Do you have a problem with that? Well, we think we readily comply with that, Your Honor. In fact, keep in mind that what 172F does is it creates a carryback where there's at least a three-year period between the act giving rise to the liability and the other events that eventually allow the deduction to be allowed, and so the deductible year. And the act giving rise to the liability here is the initiation of operations. That's your theory, right. What about, one thing that confused me, there was this special rule for nuclear power plants, F3. Yes. And that talks about just, you know, it could be as ending in the taxable year preceding the loss year. How does that jive with the three-year rule? I gather you're not able to use that one year. No, Your Honor. What that part of the act says is that rather than just the 10-year period of the carryback, there's a special carryback period for nuclear power plants that allows it to be carried back beginning with the first year the plant's in operation, ending with the taxable year preceding the loss. So that defines the beginning and the end of the carryback period. The beginning of the carryback, but it doesn't overlap with the three-year act. No, the requirement for the three years is that the act giving rise to the liability occur at least three years before the expense is deductible. If we decide the act is the generation of electricity and is only for the prior quarter, then you're out of luck. It's only if we agree with you that it goes back to when the plant began operations. Well, I think, Your Honor, that if you were to hold that the act that creates liability is the generation of electricity, you would be inconsistent with Alabama Power, which shows that these fees are not for the generation of electricity, but for the disposal of waste. No, but the obligation to pay is based on the generation of electricity. It's not, Your Honor. In fact, since 2013, under the D.C. Circuit's holding— Oh, I understand. You don't have to pay at all. Right, but this is important, Your Honor, because it's the same reasoning that this It's not about the generation of electricity. That's how it gets allocated. What this Court said in Alabama Power was that that was a proxy for waste production. The legal liability for these fees incurs at the time that the plant begins operations. That's why the NWPA amends the Atomic Energy Act's licensing and safety provisions to expressly require that before you can even begin operations at a plant, you have to show proof that you've signed into one of these standard contracts and you have taken upon yourself the legal liability to fund the full cost of the disposal of your fees through the mechanism of the NWPA contract fees. But the legal liability is for the permanent disposal of your spent fuel and high-level waste. Thank you. Good morning. Good morning. May it please the Court, my name is Ivan Dale on behalf of the United States. So, I'd like to start by giving you five reasons, briefly, why the District Court was correct to hold that the quarterly payment of fees to the Department of Energy throughout the operation of NextEra's plants cannot be carried back up to 40 years to offset income in those years. I'll address them briefly in order and then discuss them in more detail as time permits. So the first is that in order for these fees to be carried back, they have to arise pursuant to a federal law requiring decommissioning. Well, the Nuclear Waste Policy Act does not require decommissioning. It doesn't say anything about decommissioning. It's in Chapter 108 of Title 42 and only establishes a federal policy for that the Department of Energy will be responsible for cleanup of waste that builds up during operations. And when you asked counsel what the law was requiring decommissioning, he didn't say the Nuclear Waste Policy Act, he said the Atomic Energy Act. Well, the Atomic Energy Act is in Chapter 23 of Title 42. It's an entirely different section of Title 42. None of its provisions were amended by the NWPA. And while that law does require decommissioning, the fee is not imposed pursuant to the Atomic Energy Act. It's imposed pursuant to the NWPA. So if just inclusion in Title 42 is enough, then we don't have a, then basically any regulation of nuclear power plants that imposes a liability, that liability automatically becomes a liability under a law requiring decommissioning. So there's really no outer bounds to that argument. The second reason why the district court was correct is that the fees themselves are not properly characterized as decommissioning costs. They are operational costs. And I'll come back to that, but as support for that is the third reason why the district court was correct, which is that both IRS and Nuclear Regulatory Commission regulations specifically state that these fees are not decommissioning costs. In fact, the IRC regulations state that the term decommissioning costs does not include expenses incurred in connection with the disposal of spent nuclear fuel under the NWPA. And in the NRC regulations state that decommission activities are initiated when a licensee decides to terminate licensed activities. Decommissioning activities do not include the removal and disposal of spent fuel, which is considered to be an operational activity. You know, sort of inconsistent with that, though, is the code 468A that talks about the independent spent fuel storage installation is clearly a decommissioning cost per that regulation. And obviously that's taking effect while the plant's in operation. It isn't dependent on shutting it down. So you can't really say that, well, decommissioning is only applicable to the shutdown of a plant, can you? Well, what I'm not saying is that decommissioning activities only relate to activities that occur after the plant shuts down. That's sort of the way our argument was characterized in the reply brief, and it's sort of a straw man. We're not saying that you can't plan for your decommissioning. But what I am saying is that those fees for the storage of the independent spent fuel storage installation, so that's ISFSIs. So the construction of those ISFSIs was necessary in order to decommission. In other words, because the Department of Energy is not, doesn't have a place for permanent disposal. Right. What's that? Yucca Mountain never occurred. Right. The Yucca Mountain has, that project has been shelved seemingly indefinitely. It has been since about 2009 at least. So the, you know, the Department of Energy has nowhere to take this stuff. So as a result, in order to decommission a power plant now, what you have to do is build one of these temporary dry storage facilities and put the fuel in there until, and you know, it's got to be a secure facility, it's got to be housed in a certain way, and it's got to be monitored so that that radioactive material doesn't get out. So that process is now properly characterized as a decommissioning activity because it's to shut down the plant. What's interesting about that is that you can decommission a plant without permanently storing the nuclear waste in Yucca Mountain or any place else. You just have to have one of these housing, temporary housing facilities and you can decommission the plant that way. You can contract, you know, that housing facility can be on-site, it can be off-site. So it's not true as a factual matter that permanent disposal of nuclear waste is necessary to decommission a plant. It just has to be taken off-site and the site itself decontaminated. That's what's required for decommissioning a plant. I'm just, what's your position on the three-year rule? Yeah, so the three-year rule, I mean, our position is that, you know, this expense, which occurs on day one, doesn't satisfy the three-year rule. And the reason why is the act that gives rise to the liability is the generation of electricity. Yes, they signed a contract that says they will pay fees based on the generation of electricity. And that fee and that contract is entered into at the beginning of the license. But there's no actual obligation to pay until and unless you generate electricity. In fact, there are cases in which, I think the state of New Jersey case cited by the state of New Jersey started generating electricity. It only got into the testing phase. So they still had to decommission at that point, but they never paid any fees to the Department of Energy because they did not produce electricity out of the plant. And what's the effect since 2013 where nobody's paying these fees? Does that affect the three-year rule? Well, it, no, it doesn't affect the three-year rule. I mean, it means that, it means that, you know, that in combined with the fact that Congress at the end of 2017 eliminated the carryback provision entirely, it means that this case doesn't have a lot of wide application. But it doesn't really interplay with the three-year rule as I understand it. So I do want to address the three-year rule because I think the three-year rule is kind of where it's at. It makes the most sense to me, which is that the whole idea behind this provision is, you know, all these tax provisions were enacted together. They were enacted in 1984 and they wanted to address a particular issue related to something that comes up when you're on an accrual basis of accounting. So what that means is your liabilities are income when they're owed to you, and they're expenses when you owe them to somebody else, whether or not, you know, they're actually paid. So, you know, Congress was concerned, and back in 1984 interest rates were pretty high. So Congress was concerned that, you know, that something was happening there that wasn't taking into account the time value of money. So if you owed an obligation that he ended up not paying, well, you got the deduction in the year in which you owed it, but then, you know, you paid it back in the year in which you didn't owe it. So you got the benefit, you got a windfall as a result. So Congress said, we're going to do away with that. And we're going to say actual economic performance is when you can deduct the obligation. So the people impacted by that the most are people who have large expenses, large obligations that they incur now, but they don't pay or complete until later on. And so those large expenditures are of the kinds that are listed in the statute. Environmental remediation, dismantling of a drilling platform, and decommissioning of a nuclear power plant. You have this ultimate obligation at the end of the life of the nuclear power plant to decommission the facility. So you got to plan for that, and you got to plan for that by putting away money. So as a result, they had two provisions. One, which is they allowed you to deduct currently contributions to a trust used to pay those decommissioning liabilities. And the second thing they did, if you didn't use the trust, if you just put away money yourself, well then, when you paid it at the end, you could bring it back and offset it your income. And so the whole idea was matching income and expenses. What, why all of that matters is, it doesn't make any sense to offer this unlimited net carryback, net operating loss carryback provision for a fee that they could deduct on day one. You know, they could deduct on day one, they could deduct in the second year, and every year of operation, they could deduct these fees. So there's no sense in having this carryback provision. If their position, if we agreed with their position, would this be a double deduction or just a single deduction? Well, so as it stands now, you know, they've already deducted these and carried them forward and carried them back to like the 2002 and 2014 years. What they've done then is attempted to deduct it a second time and carry it back all the way to 1969. So it is a double deduction. But we're not addressing that argument on this appeal. It was left unresolved by the district court. Basically their argument is, well, it's not a double deduction because if we win, then maybe you guys can assess us based on what we incorrectly deducted the other way. So you know, it's sort of a way that, you know, they don't have anything to lose in this argument. It's all upside to them. You know, they're not really willing to put their chips behind their argument in this case. I gather there's no case in the country that really deals with the issue we're facing right now? There has never been a case that is adopted or even in which a power plant has advanced the argument, advanced by the appellants in this case. It is entirely novel. You know, I think counsel said, well, that's sort of due to the fact that they were unusual circumstances. Usually you don't sustain these kind of net operating losses, you know, at this point in time. And there's some element of truth to that. But you know, the fact of the matter is, is, you know, if you look to the dictionary definition, if you look to the definitions provided in IRS and NRC regulations, you know, it's pretty clear that, you know, decommissioning expenses aren't something that you just pay operationally on day one. The way I kind of like to think about it, and it's, you know, not to be glib about it, but you know, if I'm under a lease in an apartment, I have an obligation at the end of that lease to remove all of the waste from that apartment and give it to the next lessor in clean condition. Now, I might be able to say at the end of my lease, you know, pay somebody to haul away some of my trash, and maybe that's a moving expense. But what I can't do is say that all of the fees I paid to the municipality from day one of my lease to take away my trash, those aren't moving expenses. Those are just expenses as a result of being in a house. So by the same token, these fees, which are just fees that are designed to address the buildup of nuclear waste that occurred as a result of operating, not as a result of payment of those, you know, haul away trash fees to the municipality. They're operational expense. I know the district court had some analogy to diesel fuel on a ship, you know, as not being decommissioning of the ship. Of course, the difference is when diesel fuel is burned, it's just gone. Here you've got nuclear fuel that's going to be radioactive for thousands of years. You can't just say it's gone, right? That's true, and I think the district court was addressing a particular issue that had been raised by the appellants, but that has been abandoned on appeal, which was that the fuel itself was decommissioned. Fuel isn't commissioned and decommissioned. So with that, unless the panel has any other questions, I... Thank you. All right, I ask that the decision of the district court be affirmed. Thank you. Your Honors, let me try to be quick in my rebuttal. My friend mentioned the cost of interim storage and agrees, again, that that is a decommissioning expense, even during the operating life of the plant. The government, however, never asked what is the federal law that creates the liability for the cost of that interim storage, and the answer, and the only answer, Your Honors, is the NWPA amendments to the Atomic Energy Act, and the NWPA does amend the Atomic Energy Act. If you look at page 3 of the statutory addendum to our opening brief, you will see that there are two subsections in 10.1.3.1 of the Nuclear Waste Policy Act that make clear how the cost liabilities are going to be assigned. Subsection 4 imposes the cost of permanent disposal on the owners and generators of spent fuel. Subsection 5 imposes the same with regard to interim storage. The legal liability under federal law for the cost of interim storage is imposed under the Nuclear Waste Policy Act's amendments to the Atomic Energy Act, and it is the same federal law that requires the cost of permanent disposal to be assigned to those owners and generators of waste. With regard to decommissioning and termination of a license, with respect to my friend, he is simply mistaken. You cannot decommission a nuclear power plant, release the site for unrestricted use, and terminate the license as long as you are storing spent nuclear fuel. I would refer the Court to the NRC. But you can store the fuel without decommissioning the plant? No, Your Honor, the way it works is that original license includes the license to store material, and this is set forth in 55 Fed Reg 29186. This is the NRC's regulations promulgated under the Nuclear Waste Policy Act, not just the Atomic Energy Act, and it says the following. When the reactor is put into a condition which it cannot operate, the operating license would be amended to permit the licensee to possess the byproduct, source, and special nuclear material remaining on the site. Storage of spent fuel and dry cast under the general license could continue under the amended license, which is often called a possession-only license. It then says decommissioning, and this is an NWPA regulation, decommissioning means to remove a facility from service, reduce the residual radioactivity to a level that permits termination of the license, and release the site for unrestricted use. Spent fuel stored under a general license must be removed before the site can be released for unrestricted use, i.e. decommissioned. These are decommissioning expenses. Lastly, with regard to the three-year rule, I would just point out that virtually every argument my friend made with regard to the application of the three-year rule in this context is inconsistent with the Fourth Circuit's decision in host merit and the tax court's decision in intermet, and that there's no requirement under 172F that these fees be unusually large or sporadic. Included within the carryback of 172F are workers' compensation claims and expenses, which are similarly operational, and the spent fuel is also, excuse me, the storage of spent fuel is also characterized as operational by the NRC, and yet it is agreed to being a decommissioning expense. Thank you, Your Honors. Thank you. We appreciate the presentation. It was helpful.